IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SARA STREET,

      Plaintiff,

v.                                    No. CIV 06-0776 JB/KBM

CURRY BOARD OF COUNTY COMMISSIONERS,
Operating the Curry County Detention Center, and the
DIRECTOR AND ADMINISTRATOR OF THE
CURRY COUNTY DETENTION CENTER,  Don Burdine,
in his individual and official capacities,

      Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Plaintiff's Motion to Amended [sic] Her

Complaint for Recovery of Damages Caused by the Deprivation of Civil Rights, Personal Injury and

Tortious Conduct, filed November 8, 2007 (Doc. 38).  The Court held a hearing on January 18,

2008.  The primary issues are:  (i) whether the Court should deny Plaintiff Sara Street's motion for

leave to amend as untimely because she allegedly should have known of the facts that form the basis

of her new claims when she filed the original Complaint; and (ii) whether Street's new equal-

protection claim would be futile because the County segregated women even if it did not have a unit

named "female segregation unit."  Because Street has adequately explained when she uncovered the

evidence that forms the basis of her new Complaint, and because the Court does not believe that

Street's new claim is futile, the Court will grant Street's motion to amend.

## FACTUAL BACKGROUND

There is no dispute that the Curry County Detention Center did not have a specific area

called the "female segregation unit."  Response at 4.  However, Ellen Sue Fenn, a former employee

at the  Detention Center, testified in her deposition that women who stated that they did not get along with any female inmate in Pod 7 would be placed in a holding cell or in the attorney-room. See Defendants' Response to Plaintiff's Motion to Amend Her Complaint for Recovery of Damages Caused by the Deprivation of Civil Rights, Personal Injury, and Other Tortious Conduct, filed November 26, 2007 (Doc. 41)("Response"), Exhibit B, Deposition Ellen Sue Fenn at 56:11-57:9 (taken October 4, 2007)("Fenn. Depo.").

Street testified during her deposition that she did not know any of the women with whom she was housed at all times material hereto.  See Deposition of Sara Street at 88:24-89:24 (taken October 3, 2007)("Street Depo.").   There is no evidence that Street requested segregation or was denied segregation.

Street and her roommate, an inmate named Ginger Rodriguez, were housed together in Pod 7 of the Detention Center.  See Reply at 1.  Pod 7 is the only housing area for women.  See id.  Men are housed in various areas of the Detention Center, depending upon their classification -- minimum, medium, maximum -- and the supervision level needed for their security.  See id.  On the other hand, women, by and large, are all housed together without regard to their classification status.  See id.

Street's allegations stem from an incident that occurred on December 22, 2006, when Street got into a altercation with Rodriguez.  See Response at 1.  Street  testified that she was housed with her Rodriguez, her alleged assailant, for a few days without incident.  See Street Depo. at 90:4-91:11.  On December 22, 2006, they shared a cigarette.  See id. at 91:5-6.  Curry County argues that this fact demonstrates that Street was not aware that she was in any danger from Rodriguez.  See Response at 2.  Nevertheless, on December 22, 2004, while in the Detention Center's custody and

control,  Street received a severe beating from Rodriguez.  <u>See</u> Plaintiff's Reply in Support of Plaintiff's Motion to Amend Her Complaint at 1, filed December 17, 2007 (Doc. 44)("Reply").

Street received a closed head injury and suffered a subdural hematoma as a result of the violent battery committed upon her in the Detention Center.  <u>See</u> Plaintiff's First Amended Complaint for Recovery of Damages Caused by the Deprivation of Civil Rights, Personal Injury, and Tortious Conduct ¶ 24, at 4-5, filed November 8, 2007 (Doc. 38-2)("Amended Complaint").  Street was taken for medical services in Lubbock, Texas and underwent emergency surgery.  <u>See</u> <u>id.</u>  Street suffers serious mental and physical defect as a result of the injury.  <u>See</u> Plaintiff's Reply in Support of Plaintiff's Motion to Amend Her Complaint at 3, filed December 17, 2007 (Doc. 44)("Reply")(citing Exhibit B, Deposition of Dr. Robert Wolcott  at 26:19- 32:23)[1].

Street contends that the lack of proper classification procedures for women meant there needed to be greater supervision, i.e., direct supervision, of the women's pod.  <u>See</u> <u>id.</u>  Street contends that the Detention Center provided no direct supervision of the women.  <u>See</u> <u>id.</u>  Street contends that the Detention Center's failure to provide proper classification and supervision to the women housed in its facility, while providing for the security needs of the men, deprived Street of her right to equal protection in that the Detention Center  treated her and other women differently than it treated men in its custody.  <u>See</u> <u>id.</u>

## PROCEDURAL BACKGROUND

As part of the investigation of Street's claim, Street's counsel interviewed Fenn.  <u>See</u> Response at 2 (citing  Exhibit A, Affidavit of Ellen Sue Fenn  (executed March 8, 2006)("Fenn

---

[1]  The pages that Street provided from Dr. Walcott's deposition did not indicate when it was taken.

Aff."); Reply at 3.  In the interview, Street's counsel focused on issues of staffing, overcrowding, supervision, and response to medical emergencies.  See Reply at 3.  On March 8, 2006, Street obtained a four-page affidavit from Fenn.  See Response at 2.

The affidavit outlines the purported deficiencies of the Detention Center.  See Fenn Aff. ¶¶ 5-44, at 1-4.  After obtaining information from Fenn, and based on this pre-filing investigation, Street's counsel drafted a two-count Complaint.  See Reply at 3.  Street's counsel represents that, at the time of drafting the Complaint, they had no knowledge of the Defendants' classification system.  See id.

Street filed her original Complaint on August 24, 2006.    See Plaintiff's Complaint for Recovery of Damages Caused by the Deprivation of Civil Rights, Personal Injury, and Tortious Conduct , filed August 24, 2006 (Doc. 1)("Original Complaint").   Street alleges that her original Complaint, in compliance with rule 11 of the Federal Rules of Civil Procedure, contained only those claims that she believed she had a good-faith basis to assert.  See Reply at 5.  The first count focuses on Street's claims for negligence resulting in battery.  See Original Complaint ¶¶ 18-22, at 4.  The second count focused on Street's Fourteenth Amendment and Eighth Amendment claims alleging deliberate indifference resulting in a failure to properly train, staff, and supervise, overcrowding, and lack of supervision.  See id. ¶¶ 23-29, at 5-6.  Street  brought her claims under 42 U.S.C. §§ 1983, 1988, 28 U.S.C. § 1343, and the New Mexico Tort Claims Act.  See Original Complaint ¶ 1, at 1.

On May 17, 2007, the Court held a scheduling conference, see Clerk's Minutes, filed May 18, 2007 (Doc. 9), and, shortly thereafter, on May 18, 2007, entered a Scheduling Order.  See Scheduling Order at 1, filed May 18, 2007 (Doc. 10). The Court set the date for close of discovery and ordered that discovery would terminate on November 13, 2007.  See id. at 1.  The scheduling

order -- allowing for about seven months of discovery -- contemplated that counsel had the option of engaging in discovery in a manner that accommodated scheduling demands from other matters and that took into account summer vacation schedules.

On July 12, 2007, Street sent her initial discovery requests to Defendant Curry County Commissioners. See Certificate of Service, filed July 12, 2007 (Doc. 20). On August 2, 2007, Street sent a second set of discovery requests to the County. See Certificate of Service, filed August 2, 2007 (Doc. 27). At the request of the County's counsel, and pursuant to the professionalism obligations of Street's counsel, Street extended the due date for responses to all discovery requests to September 4, 2007. See Reply at 4.

On September 4, 2007, the County responded to Street's discovery requests. See Certificate of Service, filed September 4, 2007 (Doc. 31). At that time, Street received classification documents from the County. See Reply at 4. There were, however, objections that needed to be resolved. See id.

Street corresponded with the County's counsel about the deficiencies in the County's discovery response. Via e-mail of September 24, 2007, Street's counsel requested additional material and information. See Reply, Exhibit A at 3, E-mail from Joseph P. Kennedy , Street's counsel to William D. Slease (dated September 24, 2007). The County's counsel was prompt and courteous in response. See Reply, Exhibit A at 4, E-mail from William D. Slease, the County's counsel, to Joseph P. Kennedy (dated September 24, 2007). The County provided the bulk of the requested documents on or about October 3, 2007, one day prior to Fenn's deposition. See Reply at 4.

Before Fenn's deposition, the County's counsel provided to Street's counsel the classification documents for all inmates in Street's cell.  <u>See</u> Reply at 4.  Street's counsel represents that the classification documents revealed to Street, for the first time, the County's classification document for Rodriguez when she was housed in Pod 7 in December, 2007.  <u>See</u> <u>id.</u>  The documents also showed that Rodriguez was classified as minimum security even after her life-threatening beating of Street.  <u>See</u> Reply, Exhibit D, Curry County ADC Intake & Release Checklist at 2.  Street represents that she first became aware of a basis to allege deficit classification when she received the classification documents.  <u>See</u> Reply at 4-5.

Street's counsel and the County took Fenn's deposition on October 4, 2007.  <u>See</u> Reply at 4.  Fenn testified that women who stated that they did not get along with any female inmate in Pod 7 would be placed in a holding cell or would go to the attorney room.  <u>See</u> Deposition of Ellen Sue Fenn at 56:11-57:9 (taken October 4, 2007)("Fenn. Depo.").  The receipt of the classification documents prompted Street's inquiry of Fenn into the classification issues.  <u>See</u> Reply at 5.  Street reports that, before the receipt of the classification documents, her counsel had no reason to question Fenn or anyone else about the classification procedures for women.  <u>See</u> <u>id.</u>  Street represents that it was not until she received requested documents and took Fenn's deposition that she became aware of the differences in treatment between men and women at the Detention Center.  <u>See</u> Reply at 2.

Street represents that her counsel appraised the County's counsel of her desire to amend her Complaint via e-mail on October 17, 2007, before filing the motion to modify the scheduling order and seeking leave to expand discovery deadlines.  <u>See</u> Reply at 2.  Street represents that she also notified the County of her intent to seek leave to amend her Complaint.  <u>See</u> <u>id.</u> Street informed the County of her intent to seek leave to amend three months before the current deadline for discovery.

Via e-mail on October 19, 2007, the County's counsel informed Street that it opposed the proposed amendment.  See Reply at 5.  The County agreed, however, to a discovery extension and a modification of the scheduling order.  By agreement of the parties, the Court extended the discovery deadline until January 16, 2008.  See Plaintiff's Unopposed Motion to Extend Pre-trial Deadlines and to Vacate Trial Setting at 3, filed November 19, 2007 (Doc. 40).

On November 29, 2007, the deposition of Street's expert, Thomas Rosazza, was taken.  Rosazza explained:  "[I]f you've got a classification system that is compromised by overcrowding, the supervision element, which is the other prong to protecting inmates, becomes all the more important."  Reply, Deposition of Thomas Rosazza at 48:3-6 (taken November 29, 2007)("Rosazza Depo.").  Rosazza noted that "one of my concerns is classification and its ineffectiveness when you get a crowded situation, and in my knowledge of the problem that presents for women's -- confinement of women in jail . . . ."  Id. at 45:8-12.  Mr. Rosazza opined that "the classification system here was either broke down or was perfunctory."  Id. at 45:14-15.

On November 8, 2007, Street filed her motion for leave to amend.  See Plaintiff's Motion to Amended [sic] Her Complaint for Recovery of Damages Caused by the Deprivation of Civil Rights, Personal Injury and Tortious Conduct at 1, filed November 8, 2007 (Doc. 38)("Motion").  Street moves the Court for leave to file the First Amended Complaint that she attaches to her motion.  See id.  Street seeks leave to amend her Complaint to add a claim under 42 U.S.C. § 1983 for deprivation of her equal-protection rights.  See First Amended Complaint ¶¶ 10-16, 20, 22, 32, 37-45, 49 at 3, 4, 6-8.  The new claim asserts that the County treated men more favorably than women by having available housing for appropriate classification and supervision of male inmates but not for female inmates.  See id.

-7-

The County opposes the requested relief.  See Motion at 1; Response.  Street represents, however, that at the time she filed her motion, the County's counsel was in the process of reviewing the proposed amended Complaint.  See id.

On January 18, 2008, the Court held a hearing.  At the hearing, Street indicated that the only claim she is adding is an equal-protection claim based on gender and classification.  See Transcript of Hearing at 6:1-4 (taken January 18, 2008)("Tr.")(Court & Kennedy).[2] Street contended that she already had a claim in her Complaint for substantive due process under the Fourteenth Amendment for failure to protect.  See id. at 4:23-5:19 (Kennedy & Court).  Street indicated that, given the combination of factual issues, her equal-protection claim would survive a motion for summary judgment. See id. at 14:19-22 (Kennedy).  Street conceded that, if her substantive due process claim had to survive a "shock the conscience," standard she cannot prevail on that issue.  Id. at 15:7-9 (Kennedy).

The County contended that, if Street was attempting to add a new substantive due process claim, it would be futile, because there is no "conscience-shocking situation in this case."  Id. at 7:23-25 (Slease).  The County contended that Street's new equal-protection claim is problematic, because she cannot show that she was treated differently.  See id. at 8:6-12 (Slease).  The County conceded that it does not have separate pods for women like it has for men.  See id. at 8:19-20 (Slease).  The County argued that it separates predatory and vulnerable women from the general population in a holding cell or in an attorney room or, as a last resort, ships them out of the facility. See id. at 8:20-24 (Slease).  The County argued that it was accomplishing the goal of separate

---

[2] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

housing by taking steps to keep women safe from predators the same as it does with men.  See id. at 8:25-9:3 (Slease).  The County conceded  that it would probably not need a significant amount of discovery on Street's new claim.  See id. at 11:5-7 (Slease).  The County noted that it may need more time with Street's expert, but stated that its counsel and Street's counsel work well together and could work it out.  See id. at 11:8-15 (Slease).  The County argued that there is no factual dispute whether it has taken alternative steps to house women.  See id. at 9:17-20 (Slease).

## LAW REGARDING LEAVE TO AMEND

The grant or denial of an opportunity to amend is within the district court's discretion.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  Leave to amend should be liberally and freely given, and granted when justice requires.  See id.; Fed. R. Civ. P. 15(a)(2)("The court should freely give leave when justice so requires.").  A motion to amend may be denied for any of the following reasons: a party's undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.  See Foman v. Davis, 371 U.S. at 182.

In the United States Court of Appeals for the Tenth Circuit, "untimeliness alone is a sufficient reason to deny leave to amend, especially when the party filing the motion has no adequate explanation for the delay."  Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993)(internal citations omitted).  A court may thus deny the motion for leave to amend because of untimeliness, especially when  the party seeking an amendment knows, should have known, or has reason to know of the facts supporting the claim in the proposed amendment, but fails to include it when the original

complaint was filed.  See Las Vegas Ice & Cold Storage Co. v. Far W. Bank, 893 F.2d 1182, 1185 (10th Cir. 1990).

A court may properly deny leave to amend if the amendment would prove futile.  See Steinert v. The Winn Group, 190 F.R.D. 680, 682 (D. Kan. 2000).  The Honorable Paul J. Kelly, United States Circuit Judge, sitting by designation on the district court, has stated that, if an amended complaint would be subject to dismissal for any reason, including that it would not survive summary judgment, it is properly dismissed.  See Porter v. Alarcon, Civ. 01-008 PK/JHG, Memorandum Opinion and Order at ¶ 2, at 2, filed September 4, 2001(Doc. 76)(citing Watson v. Beckel, 242 F.3d 1237, 1239-40 (10th Cir. 2001); Gohier v. Enright, 186 F.3d 1216, 1218 (10th Cir. 1999); Bauchman v. West High School, 132 F.3d 542, 561-62 (10th Cir. 1997)).  In Watson v. Beckel, the Tenth Circuit explained that "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment."   242 F.3d at 1239-40.  The Tenth Circuit found that, because the New Mexico Military Institute had a rational basis for its choice of disciplinary procedure, the plaintiff had no basis for an equal protection claim and that the district court's refusal to allow him to amend his complaint to include it, based on futility, was correct.  See id. at 1244-45.

On the other hand, the Tenth Circuit has at times used the language of rule 12(b)(6) rather than the language of rule 56.  "The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim."  Gohier v. Enright, 186 F.3d at 1218.  In Gohier v. Enright, a plaintiff sought to amend her complaint after the defendants moved for summary judgment.  See id.  A district court affirmed dismissal of the plaintiff's claim on futility

grounds.  See id. at n.1.  The Tenth Circuit found that the plaintiff failed to allege a claim.  See id. at 1222.  See Bauchman v. West High School, 132 F.3d at 561-62 (holding that a district court's statement that a plaintiff's proposed amended complaint would be subject to dismissal under a motion for summary judgment "simply provided an alternative ground for application of the futility doctrine" and did not evidence the district court improperly applied a summary judgment standard to the plaintiff's complaint); Mountain View Pharmacy v. Abbott Lab., 630 F.2d 1383, 1389 (10th Cir. 1980)(holding that rule 15(a)'s requirement that leave to amend be freely given is inapplicable when futility of amendment is apparent)(relying upon Forman v. Davis, 371 U.S. at 182).

The United States Court of Appeals for the Sixth Circuit has held that futility should be the basis for denying leave to amend only when the proposed amendment could not withstand a motion to dismiss under rule 12(b)(6) of the Federal Rules of Civil Procedure.  See Ross v. Hartford Underwriters Insurance Co., 203 F.3d 417, 420 (6th Cir. 2000).  The Sixth Circuit explained: "The test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a  Rule 12(b)(6) motion to dismiss."  Id. at 421.

Under rule 16(b), the plaintiff is required to show good cause for any delay in modifying a schedule order providing for the amendment of claims.  See Fed. R. Civ. P. 16(b)(4)("A schedule may be modified only for good cause and with the judge's consent.").  Rule 16(b) "focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schools, No. CIV 02-1146 JB/LFT, CIV 03-1185 JB/LFG, 2007 WL 2296955 at *3 (D.N.M. June 5, 2007)(Browning, J.).  "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a  party's diligent

efforts." Id.  The Tenth Circuit has suggested that the undue delay analysis under rule 15 and the good-cause standard under rule 16(b) are roughly similar.  See Minter v. Prime Equipment Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006).  The Tenth Circuit noted:

> Some Circuits hold that a party seeking to amend the pleadings, after a deadline set for such amendments in the scheduling order, must satisfy a "good cause" requirement.  This requires the moving party to show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay.  This Circuit adopted a similar interpretation of Rule 16(b)'s "good cause" requirement in the context of counterclaims asserted after the scheduling order deadline, but has not done so in the context of an amendment to the complaint.

Id. (internal citations omitted). The Tenth Circuit explained that there is a "rough similarity between the 'good cause' standard of Rule 16(b) and [its] 'undue delay' analysis under Rule 15." Id.

## LAW REGARDING CONSTITUTIONAL
## CLAIMS BASED ON CLASSIFICATION

Lack of classification, in and of itself, may not arise to constitutional dimensions.  See Treadwell v. Bureau of Prisons, Washington D.C., 32 Fed.Appx. 519, 521 (10th Cir. 2002)(noting that "the allegedly mistaken classification and placement of [the plaintiff] do not implicate a liberty interest created under the Constitution because prisoners are not entitled to any particular degree of liberty."). When, however, classification is lacking, direct supervision responsibilities may increase. See Farmer v. Brennan, 511 U.S. 825, 833 (1994)(noting that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."). A pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." Bell v. Wolfish, 441 U.S. 520, 535 (1979).  The Supreme Court of the United States explained:

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. Traditionally, this has meant

> confinement in a facility which, no matter how modern or how antiquated, results in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial. Whether it be called a jail, a prison, or a custodial center, the purpose of the facility is to detain. Loss of freedom of choice and privacy are inherent incidents of confinement in such a facility. And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

Id. at 537.  The Supreme Court has explained that it was concerned "that a State would attempt to punish a detainee for the crime for which he was indicted via preconviction holding conditions." Sandin v. Conner, 515 U.S. 472, 483 (1995)(citing Bell v. Wolfish, 441 U.S. at 539).

## LAW REGARDING AN EQUAL-PROTECTION CLAIM

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying "any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The parties do not dispute the legal standard for an equal-protection claim.  The Equal Protection Clause is triggered when the government treats someone differently than another who is similarly situated.  See Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth., 933 F.3d 853, 859 (10th Cir. 1991)(citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)).

"The Clause 'creates no substantive rights. Instead, it embodies a general rule that States must treat like cases alike but may treat unlike cases accordingly.'" Teigen v. Renfrow, No. 06-1283, 2007 WL 4553751 at * 8 (10th Cir. December 27, 2007)(quoting Vacco v. Quill, 521 U.S. 793, 799 (1997)).  "When equal protection challenges arise in a prison context, however, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner."  Veney v. Wyche, 293 F.3d 726, 732 (4th Cir. 2002). Thus, the inquiry is "whether the disparate treatment is 'reasonably related to [any] legitimate

-13-

penological interests.'" Id. (quoting Shaw v. Murphy, 532 U.S. 223, 225 (2001)).  Even when that deferential review is applied, the court is not "ignorant to the concerns that justify application of a heightened standard outside of the prison context." Veney v. Wyche, 293 F.3d at 732.

"To establish a gender-based claim under the Equal Protection Clause, [the plaintiff] must, as a threshold matter, demonstrate that [she has] been treated differently by a state actor than others who are similarly situated simply because [the plaintiff] belong[s] to a particular class." Marsh v. Newton, No. 97-2157, 1998 WL 39235 at *2 (10th Cir. January 30, 1998).  In Barney v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998), two former inmates who were sexually assaulted by their jailer brought a § 1983 suit alleging various constitutional violations.  See id. at 1303.  The plaintiffs alleged that the defendants had discriminated against them in violation of the Equal Protection clause by subjecting them to sexual assault and harassment, putting them in solitary confinement while male inmates were not normally placed there, and denying them access to facilities and programs offered to male inmates.  See id. at 1312.  The Tenth Circuit noted that, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were differently treated from others who were similarly situated to them." Id.  The Tenth Circuit held that, absent the plaintiffs providing "any relevant information about male prisoners . . . [they could not] make the required threshold showing that they were treated differently from male inmates who were similarly situated to them." Id. at 1312-13.

The similarly situated analysis of an Equal Protection Claim based on gender in the prison context requires consideration of several factors,

> including the size of the prison populations in the facilities to be compared, the average length of sentence the inmates are serving, the inmates' security classifications, the types of crimes for which inmates have been incarcerated, and any special characteristics.  If there are wide disparities in these types of factors as

> between the particular male prisons with which [the] plaintiff seeks to compare the women's facility, the male and female inmates are not similarly situated and, therefore, any equal protection claim must fail.

Marsh v. Newton, 1998 WL 39235 at *2.   "The equal protection requirement does not take from the States all power of classification, but keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Veney v. Wyche, 293 F.3d at 730.

## LAW REGARDING SUBSTANTIVE DUE PROCESS RIGHTS

Generally, a state actor's failure to protect an individual against private violence does not constitute a violation of the Due Process Clause.  See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 197 (1989).  The Tenth Circuit has recognized two exceptions to the rule that state actors are generally not liable for acts of private violence: (i) the special-relationship doctrine; and (ii) the "danger creation" theory.  Uhlrig v. Harder, 64 F.3d 567, 572 (10th Cir. 1995).  "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." Id.  (citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. at 199-200)(noting that, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general wellbeing.").  A special relationship exists when the individual is a prisoner.  See Uhlrig v. Harder, 64 F.3d at 572.

Under the danger-creation theory, state officials can be liable for the safety of an individual, if "it created the danger that harmed the individual." Armijo By & Through Chavez v. Wagon Mound Public Sch., 159 F.3d 1253, 1260 (10th Cir. 1998)(internal quotations omitted).  To support a substantive due process claim based upon the danger creation theory, a §1983 plaintiff must demonstrate that:

-15-

> [i] the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way; [ii] the plaintiff was a member of a limited and specifically defensible group; [iii] the defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; [iv] the risk was obvious or known; [v] the defendants acted recklessly in conscious disregard of that risk; and [vi] such conduct, when viewed in total, shocks the conscience.

Ruiz v. McDonnell, 299 F.3d 1173, 1182-83 (10th Cir. 2002).  Further, "this state-created danger doctrine necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger."  Id. at 1183 (quotation and citation omitted).  Affirmative conduct for purposes of §1983 should typically involve conduct that imposes an immediate threat of harm, which by its nature has a limited range and duration.  See id.  "Moreover, the conduct should be directed at a discrete plaintiff rather than at the public at large."  Id.

Further, even if sufficient affirmative conduct has been alleged, the ultimate measure of whether conduct by state actors violates due process is whether "the challenged government action 'shocks the conscience' of federal judges."  Id.  (quoting Uhlrig v. Harder, 64 F.3d at 573).  The court must consider the following three factors in making such a determination:  "[i] the need for restraint in defining the scope of substantive due process claims; [ii] the concern that §1983 not replace state tort law; and [iii] the need for deference to local policymaking bodies in making decisions impacting public safety."  Ruiz v. McDonnell, 299 F.3d at 1184.  "These factors counsel that application of danger creation as a basis for §1983 claims is reserved for exceptional circumstances."  Id. (internal quotations omitted).  Lastly, ordinary negligence does not shock the conscience, and even permitting unreasonable risks to continue is not necessarily conscience shocking.  Rather, a plaintiff must demonstrate a degree of outrageousness, and a magnitude of potential or actual harm, that is truly conscience shocking.  See id. (quotation and citations omitted).

The shock-the-conscience requirement applies to both the special-relationship doctrine and to the danger-creation theory.  See Johnson ex rel. Estate of Cano v. Holmes, 455 F.3d 1133, 1142-43 (10th Cir. 2006)("On appeal, the personal representative argues that a 'shocks the conscience' test only applies to 'danger creation' claims and does not apply to 'special relationship' claims. This argument is directly precluded by our precedent."); DeAnzona v. City and County of Denver, 222 F.3d 1229, 1235 (10th Cir. 2000)("When a plaintiff alleges a danger was created by the defendant, the plaintiff must demonstrate that . . . such conduct, when viewed in total, is conscience shocking.").

## ANALYSIS

Street's request for leave of the Court to file her First Amended Complaint to assert her equal-protection claim has merit.  There has been no undue delay, and the County is not subject to unfair prejudice.  In addition, the County agreed to a modification of scheduling deadlines and, in doing so, did not dispute that the parties had engaged in due diligence to complete discovery in a timely manner.  Finally, the Court cannot say, at this stage of the proceedings, that Street's equal-protection claim is subject to dismissal and thus, the amendment is not futile.

## I.    THE COURT WILL NOT DENY STREET'S MOTION TO AMEND HER COMPLAINT BECAUSE SHE ALLEGEDLY DELAYED BRINGING HER NEW CLAIM.

The basis of Street's motion and the proposed amendment to her Complaint is a claim based on alleged discrimination under the Fourteenth Amendment for an alleged violation of the Equal Protection Clause.  See Plaintiff's Motion to Amended [sic] Her Complaint for Recovery of Damages Caused by the Deprivation of Civil Rights, Personal Injury and Tortious Conduct, filed November 8, 2007 (Doc. 38); First Amended Complaint ¶¶ 10-16, 20, 22, 32,  37-45, 49, at 3- 4, 6,

7-8.  In essence, Street alleges that her purported injuries occurred as a result of the County's discriminatory practices towards women.  <u>See</u> Reply at 1.  The alleged differences in treatment form the basis for Street's limited motion to amend.  <u>See</u> Reply.

Street does not seek a wholesale change of theories or to overhaul her Complaint.  Instead, Street seeks to add a discrete claim that is derivative of her previous claims.  For example, the classification issue is interwoven with the supervision issue that Street already raised in her initial Complaint.  As Rosazza explained at his deposition:  "[I]f you've got a classification system that is compromised by overcrowding, the supervision element, which is the other prong to protecting inmates, becomes all the more important." Rosazza Depo. at 48:3-6.

The County presents the issue as Street filing for leave to amend in an untimely manner.  <u>See</u> Motion at 1.  The County argues that Street had the information available to her to raise her new claim in her original Complaint, and that she delayed for one year and nine months, after obtaining the four-page affidavit from Fenn, before raising new claims.  <u>See</u> Motion at 8.  The County contends that the purported facts that form the basis of Street's proposed claims were all available to her at the time she was battered and at the time she obtained her affidavit for Fenn on March 8, 2006. <u>See</u> <u>id.</u>

It does not appear, however, that Street knew how women inmates were treated vis-a-vis men until some discovery was taken.  It also does not appear that she or her counsel were negligent in uncovering that information before discovery.  Street has thus provided the Court with sufficient and adequate explanation and reason for her failure to bring this allegation in her initial Complaint, and for the significant delay in filing her motion to amend.  <u>See</u> Fed. R. Civ. P. 15(a)(2)("The court

should freely give leave when justice so requires."). The delay was not undue. Cf. Foman v. Davis, 371 U.S. at 182 (noting that a motion to amend may be denied for a party's undue delay).

The classification documents provided in discovery triggered Street's curiosity. See Reply at 5. Until Street took Fenn's deposition, she was not fully aware that the County provided for proper isolation of predatory male inmates and failed to provide the same isolation of predatory female inmates. See id.

Street was judicious in her initial Complaint. Street was diligent in pursing discovery. Once Street began the process of discovery, received documents, and took initial depositions, she brought to the Court's attention her identification of an additional claim in a timely manner.

Street has shown good cause for a delay in seeking leave to amend. See Minter v. Prime Equipment Co., 451 F.3d 1196, 1205 n.4 (10th Cir. 2006)(suggesting that there is a "rough similarity between the 'good cause' standard of Rule 16(b) and [its] 'undue delay' analysis under Rule 15."). Street was diligent within the confines of discovery and within the confines of counsels' schedules. There is also no suggestion from the record that Street unreasonably delayed initiation of discovery. The Court gave the counsel a longer discovery deadline at the beginning of the case. See Scheduling Order at 1, filed May 18, 2007 (Doc. 10)(stating that discovery would terminate on November 13, 2007). Summer was about to begin for everyone, and the Court was cognizant that the respected counsel before the Court have other cases that demand their time and attention. That discovery did not begin in earnest until the Fall is neither surprising nor a major problem.

The County contends that Street offers no explanation for her "untimely" motion brought five days before the current close of discovery. Motion at 1. Specifically, the County argues that Street waited until November 8, 2007, five days before discovery was then set to conclude, to file the

motion to amend.  <u>See</u> Motion at 8.  In addition, the County asserts that Street has offered the Court no explanation why the claim she now seeks to bring was not included in her original Complaint. <u>See</u> <u>id.</u>  Street alerted the County to her desire to extend discovery on October 17, 2007, and the County did not oppose that request.  By agreement of the parties, the Court extended the discovery deadline until January 16, 2008.  <u>See</u> Plaintiff's Unopposed Motion to Extend Pre-trial Deadlines and to Vacate Trial Setting at 3, filed November 19, 2007 (Doc. 40).  The Court extended the discovery two more months.  <u>See</u> Unopposed Order to Extend Pre-trial Deadlines and Vacating Trial Setting, filed December 5, 2007 (Doc. 43).  Thus, in practical effect, Street filed her motion almost two months before the discovery deadline.

The Court has also reviewed the sampling of e-mails among counsel that Street has submitted.  <u>See</u> Reply, Exhibit A.  The e-mails show the diligence of all parties in completing discovery in a timely manner.  <u>See</u> <u>id.</u>  Given the scheduling obligations of counsel and the Court's scheduling order, Street has been diligent in bringing before the Court all possible claims in a timely manner, while complying with her counsel's obligations under rule 11 to assert only claims that Street had a good-faith basis to assert.

Failure of the court to allow motions to amend when discovery reveals additional theories of recovery encourages plaintiffs' counsel to assert a multitude of claims in the original Complaint, some of which may be unsupported by evidence.  Such a course of action may lead to greater motion practice and discovery, and may increase costs for all parties.

The County argues that, because discovery is about to close, permitting Street to file her proposed claim against it would prevent it from conducting the discovery necessary to evaluate the merits of this claim and to prepare a full defense thereto.  <u>See</u> Motion at 8.  It appears that the

County has had sufficient time to defend against Street's allegations.  Moreover, at the hearing, the County conceded that there was probably not a significant amount of discovery that would be needed on the new claim.  See Tr. at 11:5-7 (Slease). In any case, the Court is receptive to another extension of the time for discovery to accommodate the County's discovery needs on the new claim. The Court can eliminate or at least mitigate significantly any prejudice to the County.  Thus, the County either has had or, with the extension, will have ample time to prepare an appropriate defense to Street's alleged claim, and to competently defend against Street's proposed amendment.

Finally, the County argues that substantial prejudice to them will ensue if the court grants the motion and that the Court therefore must deny the motion.  See Motion at 8.  The Court is not convinced that allowing the amendment will burden or prejudice the County in any significant manner.  The County has not shown that they will suffer prejudice.  See Tr. at 11:5-15 (Slease)(conceding that there is probably not a significant amount of discovery that will be needed on the new claim; however, noting that it may need more time with Street's expert, but stating that its counsel and Street's counsel work well together and could work it out).

The Court must be mindful that no case is litigated in a straight line, and in any case the time needed to accomplish the tasks compete with the other needs of counsel and of counsels' clients. Litigants will uncover facts late in discovery that may, in hindsight, appear obvious.  The Court should not, however, penalize plaintiffs who diligently undertake discovery and are careful with the rule 11 objectives in their original pleading, particularly where the defendants do not show prejudice that the Court cannot cure or mitigate with extensions of the discovery deadline.

**II.      THE COURT WILL NOT DENY STREET'S MOTION TO AMEND HER COMPLAINT BECAUSE HER PROPOSED AMENDMENT IS NOT FUTILE.**

The County contends that additional bases exist for denying Street's motion to amend. Specifically, the County argues that, based on Street's allegations, the proposed amendment would not survive a motion for summary judgment. See Response at 3. The County urges the Court to deny Street's motion because the proposed amendment is futile. See id. While the Court has concerns, on the record before it, about the viability of Street's new claim, the Court is not prepared to say -- at this stage of the proceedings -- that it is futile and will not survive.

**A.      THE COURT CANNOT SAY THAT STREET'S CLAIM WOULD NOT SURVIVE A MOTION TO DISMISS OR A MOTION FOR SUMMARY JUDGMENT.**

The County wishes to argue the merits of Street's claim. There is nothing wrong with such arguments. The Tenth Circuit has indicated that an amendment may be denied for futility if it would not ultimately survive a motion for summary judgment, see e.g., Watson v. Beckel, 242 F.3d at 1239-40. (explaining that  "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment").  It has also indicated that the futility analysis is  "functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." Gohier v. Enright, 186 F.3d at 1218.

On the other hand, it is important to recognize that Street seeks in her motion only leave to amend to pursue the potential claim.  The Court needs to be mindful of the stage of the case. Discovery is not complete, and the briefing on the equal-protection issue is not through.

At the hearing, the County contended that there is no issue of fact whether it has taken alternative steps to house women. See id. at 9:17-20 (Slease).  There is also, however, no dispute

that the County had no separate segregation unit for women.  There is no evidence in the record whether Street knew that she could be segregated or could ask to be segregated.  There is also nothing in the record to help the Court determine whether the women's segregation facilities are equal to the men's.  The record is incomplete whether the vulnerable women or the predatory women were segregated from the general population.

There are gaps in the record at the present stage of the case.  Street should be allowed to complete discovery on the equal-protection claim.  The Court could also benefit from more complete briefing on the legal issues.

The Court need not, and should not, on this motion decide whether the lack of classification arises to constitutional dimensions.  On the other hand, the Court is not prepared to say, at this stage of the proceedings, that Street's proposed equal-protection claim fails.  The Court will thus not deny the amendment on futility grounds.

### B. THE COURT CANNOT SAY, AT THIS STAGE OF THE PROCEEDINGS, THAT STREET'S PROPOSED CLAIM BROUGHT UNDER THE EQUAL-PROTECTION CLAUSE FAILS, BECAUSE THERE MAY BE A DISPUTE OF FACT REGARDING THE ADEQUACY OF THE COUNTY'S HOUSING OF FEMALE INMATES.

Street complains that the male detainees had a classification program, and received supervision and protection while female detainees received less supervision and did not have a classification program.  See Reply at 7.  The County counters that Street cannot demonstrate that she was treated differently than males incarcerated in the Detention Center.  See Response at 4.  The County argues the fact that the Detention Center did not have a specific area which they called "female segregation unit" is immaterial.  Id.

The County also argues that there is no evidence that it was deliberately indifferent to the purported risk of danger to Street or that it was intentionally spiteful to her gender. Id. The County maintains that, as a result of this lack of evidence, Street is unable to establish any disparate treatment of women in the Curry County Detention Facility. Id. at 5. The County argues that, as a result of this failure of proof, Street's proposed claims under the Equal-Protection Clause fail and that the Court must deny her motion to amend.

Street represents that she still must engage in discovery to further develop the equal-protection claim. See Reply at 6. At this time, Street has sufficient evidence to appraise the County of her intent to assert such a claim. See id. Street has insufficient evidence to properly and completely respond to a motion for summary judgment.

At the time Street filed her reply, she was in the process of collecting the evidence to meet the standard in Barney v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998). See Reply at 7. An allegation that women received less supervision and did not enjoy a classification program while men received such classification and protection meets Street's obligation to plead a sufficient claim under an equal-protection theory. See id. at 7. Moreover, the Court believes that Street has presented enough evidence in the record, at this stage of the proceedings, to indicate there may be a conflict of fact whether the County's classification and housing of female inmates, in comparison to its treatment of male inmates, violates Street's rights to equal protection. Compare Reply, Exhibit D, Curry County ADC Intake & Release Checklist at 2; Fenn. Depo. at 56:11-57:9 (testifying that women who stated that they did not get along with any female inmate in Pod 7 would be placed in a holding cell or would go to the attorney room); First Amended Complaint ¶¶ 10-16, 20, 22, 32, 37-45, 49 at 3, 4, 6-8 (alleging that the County treated men more favorably than women by having available

housing for appropriate classification and supervision of male inmates) with Tr. at 8:20-24 (Slease)(arguing that the County separates predatory and vulnerable women by separating women from the general population and putting some in a holding cell or in an attorney room, or shipping them out of the facility.).  Thus, the Court cannot say, at this stage of the proceedings, that Street's new equal protection claim is not futile under Tenth Circuit standards for amendment of pleadings. See Watson v. Beckel, 242 F.3d at 1239-40 (explaining "[a] proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment."); Gohier v. Enright, 186 F.3d at 1218 (explaining  "[t]he futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim.").

While the Court may ultimately dismiss Street's equal protection claim, the Court is concerned that Street indicates she has not completed discovery and that the record before the Court is incomplete.  The Court believes that the best course is to allow the amendment and postpone any decision on the merits until a more complete record is presented by to the Court a motion for summary judgment.

## III.   THE COURT WILL NOT ALLOW ANY NEW SUBSTANTIVE DUE-PROCESS CLAIM.

The Complaint already contains a due-process claim.  That claim is not at issue on this motion.   Street denies that she is attempting to add another due-process claim based on classification.  She is attempting to add only an equal-protection claim.

The Court does not believe that the County's classification methods shock the conscience of federal courts.  Discovery is unlikely to help any substantive due process claim that Street may attempt to bring on classification.  Accordingly, based on Street's representation that she is not

attempting to add a substantive due process claim, and the Court's finding that such a claim would be futile, the Court will not permit any new substantive due process claim.

The Court need not, at this stage, determine what evidence the Court will allow on the pending due process claim.  It may well be that the evidence of classification will be relevant to the pending due-process claim.  That evidentiary issue, however, must wait until the conduct is more defined and the evidence is clearly identified.

**IT IS ORDERED** that the Plaintiff's Motion to Amended [sic] Her Complaint for Recovery of Damages Caused by the Deprivation of Civil Rights, Personal Injury and Tortious Conduct is granted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Randall M. Harris
Harris Law Firm
Clovis, New Mexico

-- and --

Joseph P. Kennedy
Shannon L. Kennedy
Mary Lou Boelcke
Kennedy & Oliver, P.C.
Albuquerque, New Mexico

  *Attorneys for the Plaintiff*

William D. Slease

Jonlyn M. Martinez
Slease & Martinez, P.A.
Albuquerque, New Mexico

   *Attorneys for Defendant Curry Board of County Commissioners*

Daniel J. Macke
Robles, Rael & Anaya
Albuquerque, New Mexico

   *Attorneys for Defendant Don Burdine*